UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE CRESPO,

    Plaintiff,

v.                                      Case No.:  8:23-cv-01159-NHA

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of Defendant's denial of his claim for disability insurance benefits ("DIB"). Having reviewed the parties' briefing and the record below, I find that the Administrative Law Judge ("ALJ") (1) lacked substantial evidence to support her finding that Plaintiff could perform a job in which he must occasionally interact with the public, coworkers, and supervisors; and (2) failed to reconcile a conflict between the testimony of the vocational expert ("VE") and the Dictionary of Occupational Titles, published by the Department of Labor ("DOT"). Accordingly, I remand this case to the Social Security Administration for further proceedings.

    **I.    Background**

Plaintiff was born in 1983. R. 185. After earning his college degree, he served in the United States Army for a little more than a year. R. 222, 251. His

military service included a tour of duty in Iraq. R. 346. After his return from Iraq, Plaintiff was diagnosed with post-traumatic stress disorder (PTSD) and depression (R. 243); because of these afflictions, he struggled to manage his anger appropriately. *See, e.g.,* R. 248 (noting issue in 2008); R. 332 (same in 2021).

In December 2018, Plaintiff began working for Osceola County. R. 805. During his three-year tenure, Plaintiff was involved in approximately ten workplace incidents in which he acted with aggression, became confrontational, and/or threatened others, including his supervisors and members of the public. R. 805. Plaintiff was terminated on December 7, 2021, and thereafter deemed by the Department of Veteran Affairs to be 100% disabled due to his service-connected disabilities. R. 251, 833.

On December 28, 2021, Plaintiff filed his application for DIB, alleging he became disabled on December 6, 2021. R. 84. He alleged that his disability resulted from sleep disorder, anxiety, depression, and PTSD. R. 221.

Both the written record and Plaintiff's testimony before the ALJ on October 3, 2022 reflect Plaintiff's difficulty interacting with others. For example, in October 2021, while evaluating Plaintiff's fitness for duty, Shauna M. Laughna, Ph.D. noted that Plaintiff was paranoid and tended to escalate confrontations. R. 820 ("[H]e is likely to incur interactions that can become violent."). These traits appeared to manifest on December 13, 2021, when

2

Plaintiff was pulled over for a traffic violation. R. 250. Although the details are unclear, the police ultimately physically restrained Plaintiff, arrested him, removed the weapons from his home, and filed a petition for a protective order against him. R. 250, 341, 653, 835-37. In January 2022, Plaintiff reported that he found himself suspicious of people, despised other people, and sometimes fantasized about harming them. R. 240, 242. On an April 1, 2022 function report, he reported difficulty communicating with the public due to the fact that he was easily agitated and "do[esn't] like people" or authority figures. R. 262, 266-67. Accordingly, Plaintiff avoided leaving the house. R. 265-66. Plaintiff's brother corroborated that Plaintiff "thinks people are after him" and has a short temper. R. 311-12. Plaintiff has a teenage son who lives with his mother, and whom Plaintiff is not permitted see. R. 49, 375. In October 2022, Plaintiff testified that, he had to buy his own home because his family could not bear to live with him and, while he sometimes attended a course about motorcycle mechanics, he has gotten into arguments with teachers and other students there. R. 51-52.

## II. Procedural History

Following Plaintiff's application for DIB on December 28, 2021, the Commissioner denied Plaintiff's claim, both initially and upon reconsideration. R. 73, 82, 84. Plaintiff then requested an administrative hearing. R. 103. The ALJ held a hearing at which Plaintiff testified. R. 34-62. Following the hearing,

the ALJ found Plaintiff was not disabled and denied Plaintiff's claims for benefits. R. 17-28.

The ALJ used the Social Security Regulations' five-step, sequential evaluation process to determine whether Plaintiff was disabled. R. 18-19. That process analyzes:

1) Whether the claimant is currently engaged in substantial gainful activity;

2) If not, whether the claimant has a severe impairment or combination of impairments;

3) If so, whether the impairment(s) meet(s) or equal(s) the severity of the specified impairments in the Listing of Impairments;

4) If not, whether, based on a residual functional capacity ("RFC") assessment, the claimant can perform any of his or her past relevant work despite the impairment; and

5) If not, whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

20 C.F.R. § 404.1520(a)(4)(i)-(v).

Following the hearing, the ALJ concluded that:

1) Plaintiff had not engaged in substantial gainful activity since December 6, 2021, the alleged onset date. R. 20.

2) Plaintiff did have severe impairments, specifically, "generalized anxiety disorder, depressive disorder, and post-traumatic stress disorder (PTSD)." *Id.*

3) Notwithstanding the noted impairments, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16.

4) Plaintiff's RFC allowed him to perform a full range of work at all exertional levels but with the following non-exertional limitations: performing only simple routine tasks during an 8-hour workday, and having only occasional contact with coworkers, supervisors, and the general public. R. 22.

5) Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), Plaintiff was unable to perform his past relevant work, but could perform work that exists in substantial numbers in the national economy, including the jobs of can filler, lining inserter, and laundry marker. R. 26-27.

Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff was not disabled. R. 28.

Following the ALJ's ruling, Plaintiff requested review from the Appeals Council, which denied it. R. 1-13. Plaintiff then timely filed a complaint with

5

this Court. Compl., Doc. 1. Plaintiff filed a brief opposing the Commissioner's decision (Doc. 13), and the Commissioner responded (Doc. 14). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### III. Standard of Review

The Court reviews the ALJ's decision with deference to its factual findings, but no deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the Commissioner's legal conclusions, . . . our review is *de novo*."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the determination is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is merely "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curium)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). That said, the ALJ must state the

grounds for his decision with enough clarity to enable the Court to conduct meaningful review of the standards he employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

In making its decision, the Court must review the entire record. *Id.*; *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

**IV.     Analysis**

Plaintiff alleges the ALJ erred by (1) finding that Plaintiff was capable of performing work that required occasional interaction with others; (2) failing to resolve internal discrepancies within the VE's testimony, and between the VE's testimony and the DOT; (3) failing to consider and give great weight to the Department of Veteran Affairs' finding that Plaintiff was 100% disabled; and (4) failing to find Plaintiff's physical (i.e. non-mental) impairments severe, or to otherwise consider the impact of his physical impairments on his RFC. I agree with Plaintiff that remand is required on each of the first two grounds. I disagree with Plaintiff as to the last two.

> A. <u>Substantial evidence does not support the ALJ's finding that Plaintiff can perform work requiring occasional interaction with others.</u>

Plaintiff challenges the ALJ's finding that Plaintiff could perform work that required him to occasionally interact with others. Pl. Br., Doc. 13.

A person's RFC is the most that he "can still do despite his limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must assess the RFC based on "all the relevant evidence in the [] record," including the medical evidence, and must consider all the claimant's impairments, both severe and non-severe. *Id.* § 404.1545(a)(1)-(3).

In forming the RFC, an ALJ may discredit a claimant's subjective complaints. *Moore v. Barnhart*, 405 F.3d 1208, 1212-13 (11th Cir. 2005). However, the ALJ must articulate "explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

Here, Plaintiff testified that he was unable to communicate properly with others, and the ALJ acknowledged support for that testimony, including that Plaintiff was unable to live with family, argued with teachers and students in his courses, had negative interactions at work, and generally isolated himself. R. 21. But the ALJ discounted this testimony and concluded that Plaintiff had only a moderate limitation in interacting with others (R. 21) and should be limited to "occasional contact with coworkers, supervisors, and the general public" during the workday (R. 22).

8

The ALJ indicated his conclusion was based on: (1) that Plaintiff was cooperative and exhibited good judgment, along with other normal behaviors, during medical examinations; (2) that Plaintiff was able to do perform activities of daily living, such as going shopping and to doctor's visits; and (3) that Plaintiff was able to visit his brother and attend a weekly course about motorcycles. R. 21, 28. These reasons are insufficient to discredit Plaintiff's reports about the limitations caused by his depression, anxiety, and PTSD.

I first discuss Plaintiff's behavior during medical examinations. In *Simon v. Commissioner, Social Security Administration*, 7 F. 4th 1094 (11th Cir. 2021), the Eleventh Circuit considered an ALJ's denial of benefits to a claimant who suffered from mental health conditions.[1] The Eleventh Circuit criticized the ALJ's reliance on generalized statements from providers that a claimant was "cooperative," during medical visits, to reject a medical opinion that the claimant was unable to work. *Simon*, 7 F.4th at 1098, 1107, 1109. The Circuit explained, "such capabilities . . . say little to nothing about the capacity to work of a person suffering from [chronic depression, anxiety, and bipolar

---

[1] *Simon* addresses an ALJ's rejection of a treating physician's opinion in a social security claim filed before March 27, 2017, when the ALJ was required to give a treating physician's opinion "substantial or considerable weight unless there is good cause to discount [it]." 20 C.F.R. § 404.1527; *Simon*, 7 F. 4th at 1004. Even though the standard for considering medical opinions has since changed, the distinctions *Simon* highlights, between performing chores and attending medical appointments, on one hand, and a work environment, on the other, remain valid and applicable.

9

disorder]." *Id*. Thus, "when evaluating a claimant's medical records, an ALJ must take into account the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace." *Id*. at 1107.

Here, although medical notes suggest that Plaintiff was often cooperative during medical encounters, *see, e.g.,* R. 347, 358, 367, that was not consistently the case, *see, e.g.,* R. 333-34 (refusing medical intervention); R. 806-09 (detailing several uncooperative behaviors during an attempted examination). And the record reveals that Plaintiff was much less cooperative in less controlled environments, including in his former workplace, his classes, and when met by law enforcement. R. 52, 250, 341, 653, 805. Plaintiff's behavior at medical examinations does not comprise sufficient evidence to support the ALJ's conclusion that Plaintiff could work in a job that required him to interact with the public.

I turn next to Plaintiff's ability to perform basic chores. *Simon* also addressed an ALJ's reliance on a claimant's daily living activities to undermine an opinion that the claimant's mental conditions prevented him from working:

> In our view, it goes almost without saying that many people living with severe mental illness are still capable of eating, putting on clothes in the morning, and purchasing basic necessities. None of those activities, however, say much about whether a person can function in a work environment—with all of its pressures and obligations—on a sustained basis.

10

> Without some reasonable explanation from the ALJ as to why completing basic household chores is inconsistent with a finding of disability, this evidence was not sufficient to discredit [the treating physician].

*Id.* at 1108.

The ALJ proffered no explanation as to how she translated Plaintiff's ability to shop and attend medical appointments into an ability to interact with others in the workplace. And, as explained by the *Simon* court, the fact that Plaintiff was able to attend to his basic living and medical needs, does not alone support a finding that Plaintiff could interact with others in a work environment.

Finally, I discuss the ALJ's reliance on Plaintiff's ability to take a course on motorcycles and visit to his brother to support her finding that Plaintiff could interact with others at work. *See* R. 21. Plaintiff did sometimes attend a weekly course, but he testified that he fought with both his classmates and his teacher. R. 52. And, Plaintiff visited his brother for dinner, but this occurred just once or twice a month. R. 239, 305. These short, infrequent (and not wholly successful) interactions do not establish that Plaintiff can consistently engage in appropriate interactions with others in a work environment on a daily basis.

This is especially true in the context of a record that shows Plaintiff was terminated from multiple jobs based on his negative interactions with others. R. 44-45, 805. He had to move into his own home because his family could not

11

tolerate him. R. 51. His child's mother would not allow their son to see Plaintiff. R. 375. And Plaintiff's interaction with police following a traffic stop resulted in the police physically restraining Plaintiff and seeking a protective order against him. R. 250, 341, 653, 835-37.

Substantial evidence does not support the ALJ's finding that Plaintiff could work in a job requiring occasional contact with coworkers, supervisors, and the general public. This error necessitates remand.

### B. The ALJ failed to address conflicts with the VE's testimony.

Plaintiff also argues that the ALJ erred by failing to resolve conflicts within the VE's testimony, and between the VE's testimony and the DOT. Pl. Br., Doc. 13.

Once the ALJ has determined a claimant's limitations, the Social Security Administration (SSA) has the burden "to show the existence of . . . jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements [the claimant is] able to meet with [his] physical or mental abilities and vocational qualifications." 20 C.F.R.§ 404.1566(b).

The regulations expressly allow the ALJ to consider a VE's testimony and the DOT in determining the type and number of jobs available to a given

12

claimant in the national economy. *Id.* § 404.1566(d)(1), (e). In 2000, the SSA sought "to clarify [the] standards [in 20 C.F.R. § 404.1566] for identifying and resolving . . . conflicts" between a VE's testimony and the data in the DOT. SSR 00-4p.[2]

In relevant part, the SSA explained that "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict;" rather,

> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

*Id.* When the ALJ fails to identify and resolve apparent conflicts between the VE's testimony and the DOT, the ALJ's decision is not supported by substantial evidence. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018).

Here, the ALJ asked the VE what jobs would be available to a person who was limited to only occasional contact with coworkers, supervisors and the

---

[2] This Ruling is binding within the Social Security Administration. 20 C.F.R. § 402.35(b)(1) ("[SSA Rulings] are binding on all components of the Social Security Administration."); *see also Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) ("We require the agency to follow its regulations where failure to enforce such regulations would adversely affect substantive rights of individuals." (citations and internal quotations omitted)).

13

general public. R. 57, 59. The VE testified that a person with those limitations could perform jobs in the national economy, including as a can-filler, lining inserter, and laundry marker. R. 58-59. But, although the SSA defines "occasional" as occurring up to one-third of the time, SSR 83-10, the VE testified that she understood "occasional" to mean two-thirds of the workday. R. 61. Thus, her testimony in response to the hypothetical was that Plaintiff could work in these jobs if he could interact with his co-workers, the general public, and his supervisor for up to two-thirds of the workday. Later, the VE testified that an individual would be precluded from working in the national economy if he was only able to work around others for one-third of the workday (what the DOT defines as "occasional" contact with others). R. 60.

Following the hearing, Plaintiff raised this discrepancy in a letter to the ALJ. R. 315. The ALJ's response failed to resolve the conflict. The ALJ acknowledged that (1) the SSA defined occasional to mean one-third of the workday, (2) the VE provided three jobs in response to a hypothetical with limitations for occasional interaction with coworkers, supervisors and the general public (*id.*), and yet (3) the VE testified "that no work would remain for an individual who was unable to interact with coworkers and supervisors for at least two thirds of an eight-hour workday," but the ALJ then appeared to conclude that these discrepancies were of no import. *See* R. 28. The ALJ followed these observations by stating that Plaintiff's medical record was

14

inconsistent with an inability to interact with others and that the ALJ "accepted" the VE testimony without any qualifications. *Id.*

This was error. First, as addressed above, the ALJ's conclusion that Plaintiff was able to perform a job that required occasional interaction with others was unsupported by substantial evidence. Additionally, however, once the ALJ found that Plaintiff was limited to occasional interaction with others (R. 21), the ALJ could not have both (1) "accepted" the VE's testimony "that no work would remain for an individual who was unable to interact with coworkers and supervisors for at least two thirds of an eight-hour workday," and (2) concluded that Plaintiff was able to find work and was therefore not disabled.

In its response brief, the Defendant argues that any error in the VE's testimony was harmless, because the DOT describes all three jobs the VE identified as available to Plaintiff as requiring very minimal interaction (less than "occasional" under the SSA's definition) with co-workers, the general public, and a supervisor. Def. Br., Doc. 14. Thus, if Plaintiff could have "occasional" interaction with others, as defined by the SSA, he could still work as a can-filler, lining inserter, and laundry marker. But SSR 00-4p makes clear that the DOT does not automatically "trump" the VE's testimony. Rather, the ALJ was required to resolve, and to explain her resolution of, the conflict

15

between the VE's testimony and the DOT. SSR 00-4p; *Washington*, 906 F.3d at 1362. The ALJ did not do so here. This error necessitates remand.

C. <u>Plaintiff's remaining arguments are easily dismissed.</u>

Plaintiff's last two arguments are easily dismissed.

Plaintiff argues that the ALJ erred by failing to consider and give great weight to the Department of Veteran Affairs' finding that Plaintiff was 100% disabled. Pl. Br., Doc. 13. But for disability claims filed after March 27, 2017 (like Plaintiff's), the Department of Veteran Affairs' finding is not binding and the ALJ is not required to provide any analysis of or assign any specific weight to the finding. *See* 20 C.F.R. § 404.1504; *see also Concepcion v. Comm'r of Soc. Sec.*, No. 23-11365, 2024 WL 340882, at *1 (11th Cir. Jan. 30, 2024) (holding the ALJ must only consider the supporting evidence underlying the other agency's decision).

Plaintiff last argues that the ALJ erred by failing to find Plaintiff's physical (i.e. non-mental) impairments severe, or to otherwise consider the impact of his physical impairments on his RFC. Pl. Br., Doc. 13. When asked on his application to "List all of the physical or mental conditions (including emotional or learning problems) that limit your ability to work," Plaintiff did not allege any physical impairments. R. 221. And, at the reconsideration stage, he reported an increase in panic attacks, not any physical conditions. R. 255-56. He also did not testify to any physical limitations at the October 2022

hearing. R. 48-55. Accordingly, the ALJ had no duty to consider them, let alone find them severe or impactful on Plaintiff's ability to work. *See Duffy v. Comm'r of Social Security*, 736 F. App'x 834, 837 (11th Cir. 2018) (finding the ALJ had no duty to consider an impairment that the plaintiff did not allege in her disability application or at the hearing); *Sullivan v. Comm'r of Social Security*, 694 F. App'x 670, 671 (11th Cir. 2017) (finding the ALJ did not err despite not considering medical reports addressing conditions not alleged in the application for benefits or raised at the hearing); *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (ALJ had no duty to consider an impairment where plaintiff did not allege that she was disabled due to the impairment either when she filed her claim or at the hearing).

**V.     Conclusion**

For the reasons above:

(1)    This case is REMANDED to the Social Security Administration.

(2)    Upon remand, the ALJ is directed to conduct proceedings and articulate findings as necessary to:

   a. Identify sufficient evidence to support any finding as to Plaintiff's ability to interact with others;

   b. Resolve inconsistencies between the DOT and the VE's testimony, and to provide a sufficient explanation of the resolution, pursuant to SSR 00-4p; and

17

      c. Otherwise ensure the decision comports with applicable case law and regulations.

(2)     The Clerk of Court is directed enter judgment in the Plaintiff's favor, terminate any pending motions, and close the case.

ORDERED on February 20, 2024.

*Natalie Hirt Adams*
NATALIE HIRT ADAMS
United States Magistrate Judge